GREER, HAWES & COMPANY, Appellants, v. A. M. SEVERSON AND A. R. SEVERSON, Appellees.

Intoxicating Liquors: CONSENT TO ESTABLISH SALOON: NOTE GIVEN AS CONSIDERATION FOR CONSENT: PUBLIC POLICY. A note given in consideration of the execution of a written statement of consent to the establishment of a saloon, as required by section 17, chapter 62, laws of the 25th General Assembly, is void as against public policy.

*Appeal from Winneshiek District Court.*—HON. L. E. FELLOWS, Judge.

WEDNESDAY, JANUARY 21, 1903.

ACTION at law on a promissory note signed by defendants Severson. Defense, illegal consideration. The trial court sustained defendant's motion for judgment on the pleadings, and plaintiffs appeal.—*Affirmed.*

' *Geo. W. Adams* for appellants.

*Anundsen & Houck* for appellees

DEEMER, J.—Defendants were desirous of establishing a saloon in the city of Decorah, adjacent to plaintiffs'

property. To do so, they were required by law to have plaintiffs' written consent to the establishment thereof. Defendants attempted to obtain this consent, but were unable to do so except upon conditions that defendants would pay plaintiffs the sum of $500, and fulfill some other requirements imposed by plaintiffs. The negotiations finally ripened into the giving of the note in suit, and the execution of the following contract: "This agreement, entered into this 15th day of September, 1896, by and between Anna M. Severson and Andrew Severson, party of the first part, and Greer, Hawes & Co., party of the second part, witnesseth, that whereas, Andrew Severson, one of the party of the first part, is desirous of opening a saloon for the sale of liquors in accordance with the laws of Iowa upon lot one (1), block ten (10), Decorah, Iowa; and whereas, the party of the second part are owners and occupants of a lot and building adjoining said lot aforesaid on the west; and whereas, it is necessary to procure the consent in writing for conducting of said business, which consent is hereby given, and a writing to that effect is herewith executed by the said Greer, Hawes & Co.: Now, in consideration therefor, the said party of the first part agrees to pay to the said party of the second part the sum of five hundred dollars in one year from this date, which said sum is evidenced by a promissory note of this date. And the said party of the first part, in addition thereto, agrees to give the party of the second part the free use of the barn upon the rear end of said lot one aforesaid for five years from this date, to wit, Sept. 15th, 1896. It is further argeed that in case said party of the first part shall not erect a brick building upon said lot one aforesaid, but shall put a wooden structure, for saloon purposes, then and in such case the party of the first part shall erect upon the west line of said lot one aforesaid a brick fire wall in height and length sufficient to protect the building of the party of the second part against fire and against loss or

damage from extra fire risk; otherwise the argeement of consent to sell intoxicating liquors shall be null and void. In witness whereof, we have hereunto set our hands this 15th day of September, 1896." The note matured September 15, 1897, and, defendants failing to pay, this action was brought to enforce it. Defendants pleaded that the agreement which constituted the consideration for the note was and is contrary to public policy, and in violation of section twenty, chapter sixty-two, of the Acts of the 25th General Assembly, and therefore void. This defense was held good by the trial court, and the appeal is from that ruling.

The section of the statute referred to reads as follows: "The signing the name of another to any statement of consent or petition provided for in this act, shall be deemed forgery and punishable under the statutes as such, and each such statement or petition shall be accompanied by the affidavit of some reputable person, showing that said person personally witnessed the signing of each name appearing thereon, and any false statement contained in such affidavit shall be deemed perjury and punishable as such, and all provisions of law relative to the brib'ry of voters are hereby made applicable to the bribery of signers to any such statement of consent or petition. All statements of consent or petitions shall show the voting percinct of the signers thereof, and date of signing, and no names shall be counted that were not signed within thirty days prior to the filing of said petition or statement of consent."

Without at this time determining the applicability of this statute, we have to say that we think the contract is so clearly contrary to public policy that it cannot be sustained, or made the basis of a promise to pay money for signing the consent to the establishment of a saloon. At the time the contract was entered into, the law required the written statement of consent to the establishment of a

saloon from all resident freeholders owning property within fifty feet of the premises where the business was to be carried on.    Section seventeen, chapter sixty-two, Acts 25th General Assembly.    Manifestly, such consent was not intended to be the subject of barter and sale.    To so hold would make the law a mockery, and subject it to the scorn and contempt of all.    No one should be permitted to make traffic of his principles.    The law contemplates voluntary consent, and not an agreement based upon a consideration to gratify personal ends.    The right to consent or to object to the establishment of a saloon in proximity to one's property is too sacred to be the subject of barter, and, if the parties themselves will not so treat it, courts will do all in their power to see that its integrity is preserved.    If one is conscientiously opposed to the establishment of saloons near his property, he should not be tempted by offers of money to put aside his scruples.    On the other hand, if he has no such scruples, but thinks he can secure some pecuniary advantage by pretending that he has, and thus exacts a promise of reward for doing that which he has no objection to doing, the law should not reward him for his conduct.    This right to consent or to object should be treated as sacred as the right to vote, and we apprehend it would not be claimed that a promise based on a particular vote could be enforced.    The mere statement of the proposition is so strong an argument in favor of the conclusion that the agreement is invalid that little can be added thereto.    It is true that public policy is variable, and that there is no fixed rule by which to determine what it is, but it is manifest, we think, that the public has an interest in how these statements of consent are obtained. Of course, it was for plaintiffs to say whether or not they would give consent to the establishment of a saloon adjacent to their property; and, if they gave their consent voluntarily, the public should not complain.    But the public has an interest in the means whereby that consent

is obtained. The law was not enacted to further black-mail, nor to permit one to make traffic of its provisions, and any attempt to do so should be frowned upon by the courts. We cannot lend our assent to the doctrine that no one but the property owner and the person who seeks to establish the saloon is interested in this matter of consent. The public is interested in the enforcement of law, and the integrity of the ballot, and the voluntary action of all petitioners.

The judgment of the district court is manifestly correct, and it is AFFIRMED.